**In re SYSTEMS IMPACT, INC., Chapter 11 Debtor In Possession.**

**Roland E. Goode and Dorothy W. Goode, Plaintiffs,**

v.

**Harry Hagerty, Jr., John W. Hanes, John W. Hanes Liquidating Trust, c/o Gerald M. O'Donnell, Trustee, H. Lawrence Clark, Defendants.**

**Bankruptcy No. 96–10309–T.**
**Adversary No. 96–1271–T.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

July 27, 1998.

F.Douglas Ross, Odin, Feldman & Pittleman, P.C., counsel for Plaintiffs.

Kevin M. O'Donnell, Henry & O'Donnell, Fairfax, VA, counsel for Harry Hagerty, Jr., John W. Hanes, and The John W. Hanes Liquidating Trust, c/o Gerald M. O'Donnell, Trustee.

Jonathan H. Hambrick, Hudgins Carter & Coleman, Alexandria, VA, counsel for H. Lawrence Clark.

Frank E. Brown, Jr., Adams, Porter & Radigan, Ltd., McLean, VA, counsel for H. Lawrence Clark.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Trial on the plaintiffs' complaint was held on March 17, 1998. At the conclusion of trial, the court granted the plaintiffs' motion to dismiss the counterclaim of defendant H. Lawrence Clark. The other issues were taken under advisement. The parties have submitted proposed findings and memoranda of law.

For reasons stated in this opinion, the court will dismiss Counts I and III of the complaint (11 U.S.C. § 510(a)). The court will enter a judgment of equitable subordination for plaintiffs under 11 U.S.C. § 510(c) against defendants John W. Hanes and John W. Hanes Liquidating Trust in the amount of $119,426.61 and against defendant Harry Hagerty, Jr., in the amount of $59,335.54. The complaint will be dismissed as to defendant H. Lawrence Clark.

### Facts

Plaintiffs Roland and Dorothy Goode are shareholders of Systems Impact, Inc., and prior to the loans at issue in this case, they had purchased stock or converted loans into equity totaling approximately $600,000.00. The Goodes were formerly husband and wife but had been divorced in 1985. However, at all relevant times Mr. Goode acted for or negotiated on behalf of Mrs. Goode with respect to their loans to Systems Impact.

In February 1988 the Goodes loaned $350,-000.00 to Systems Impact, evidenced by two promissory notes dated February 25, 1988.

The notes had original maturity dates of August 17, 1988, and also provided for extensions but not beyond August 17, 1989. The maturity dates of the notes were extended, ultimately making them due and payable on August 17, 1989.

When Systems Impact requested that Goode further extend the notes, he declined because the Goodes had taken out bank loans corresponding with their loans to Systems Impact, and those loans were coming due at the same time that the notes matured.

The notes were not paid at maturity, and over the next several months Goode had several communications with Systems Impact about the overdue notes. On one occasion, Systems Impact advised Goode that it was close to being able to make the payment. On another occasion, defendant Hanes advised Goode that if necessary the directors would personally make good on the company's notes to the Goodes. However, no payment was made even after Goode threatened to pursue legal action if the notes were not paid by January 18, 1990. In fact, as Goode was aware, the corporation was financially unable to pay the notes at this time.

On February 23, 1990, the board of directors of Systems Impact met to address the unpaid notes of the Goodes. It was reported to the board that the Goodes were concerned because their notes were not secured directly by the assets of the company. In order to induce the Goodes to forestall legal action, the Systems Impact board adopted the following resolution:

> RESOLVED, that if all, or substantially all, of the assets of the Company should be sold for cash, marketable securities, or notes, or if any transaction is consummated which has substantially the same economic effect of such a sale:
>
> 1. The Company will simultaneously with the consummation of any such transaction, repay the Goode notes with accrued interest to the maximum extent funds are available before any other obligations to unsecured noteholders or shareholders are met.

Defendants Clark and Hanes, who were directors at the time, voted in favor of the resolution. (Hagerty became a director of Systems Impact sometime prior to March 1992.) The purpose of the resolution was to assure the Goodes that their notes would be paid before the other noteholders in the event the resolution was triggered. Other holders of substantial promissory notes of the corporation included the individual defendants Hagerty, Hanes and Clark. A copy of the resolution was forwarded to Goode, who was pleased with it because he knew that Hanes and Clark were owed debts larger than the Goodes' notes and that Hanes and Clark would make every effort to cause the company to be successful enough to pay their debt.

During this time the only source of income to Systems Impact was from the marketing of educational software to school systems under an agreement with an entity known as Phoenix Films, Inc.

In 1991 defendant Clark made loans to Systems Impact in the total amount of $200,000.00 so that the company could continue operating ("keep the lights on" financing) while it negotiated for new contracts. Systems Impact and Hanes agreed that these loans would be repaid from the first available funds.

In December 1991 Goode was advised by Systems Impact that it had been negotiating with Discovery Communications, Inc., operator of the Discovery (cable television) Channel to create a proposed joint venture. In order for the joint venture to proceed, Goode was advised that all unsecured noteholders would be required to sign a standstill agreement. After reviewing the draft agreement, Goode did not want to sign it because he believed the transaction called for a transfer of the company's assets, and he wanted reassurance that the subordination provided in the board resolution of February 23, 1990, would be maintained. Goode expressed these concerns to Hanes and Douglass Sawyer, then president of Systems Impact.

Under the Discovery Channel transaction, which became effective on April 1, 1992, Systems Impact agreed to contribute intellectual and other property rights to a newly formed entity known as Learning 2000, Inc. In exchange for these assets, Systems Impact was

to receive stock in Learning 2000. The stock in Learning 2000 was held entirely by Systems Impact and the Discovery Channel and was not made available to the general public. After entering the Discovery transaction, Systems Impact retained the marketing rights to the educational software that it sold to Phoenix Films, Inc. Since the Discovery transaction Systems Impact has continued to realize sales of between $1,000,000.00 and $2,000,000.00 annually from the Phoenix agreement.

Hanes wrote Goode a letter dated January 2, 1992, which stated in part that the resolution of February 23, 1990, "continues in full force and effect." The letter also stated:

> I think it is very clear that the intent of the Resolution will have been satisfied upon the completion of the Discovery transaction, and the operative part of the Resolution will have been triggered.

Hanes' letter was significant to Goode because he believed that the subordination resolution would be triggered by the Discovery transaction and that the standstill agreement did not change the subordination resolution.

On February 18, 1992, Sawyer wrote Goode a letter which stated that the standstill agreement

> ... does not, in any way, alter any preexisting priorities of debt payment agreed among the Company and certain of its creditors. Such agreements will continue to govern the order of payments, as and when the Company is in a position to make them.

This letter went on to state that there were only two such agreements, the first of which concerned Clark's loans of $200,000.00, to "be repaid with the first monies available" and second, the Goodes' $350,000.00 notes which had been given priority in the 1990 resolution. Sawyer's letter was significant to Goode because he believed Systems Impact's president was confirming that the subordination resolution would be honored following the Discovery transaction and notwithstanding the standstill agreement.

The standstill agreement, which is dated April 1, 1992, and was signed by the Goodes on March 26, 1992, was a contract between Systems Impact and its unsecured noteholders. Paragraph 2 of the Standstill Agreement provided that the enforcement rights of the unsecured noteholders were to be held in abeyance during the three year term of the agreement. Paragraph 3 provided that the noteholders would be paid pro rata from funds received by the corporation under its contract with Phoenix Films, Inc. And paragraph 7 provided that the agreement constituted the entire agreement between the corporation and its noteholders and that it superceded "all previous oral and written and all contemporaneous oral negotiations, commitments, writings and understandings."

Other than the delay in the Goodes' right to enforce payment of their notes, the standstill agreement did not change the subordination resolution of February 23, 1990, as to them. Neither did the Discovery transaction involve a sale by Systems Impact of all, or substantially all of its assets for cash, marketable securities, or notes, and it therefore did not trigger the priority payment provisions of the resolution.

On March 31, 1992, Systems Impact's board of directors met and, among other action, adopted the following Resolution:

> WHEREAS, the Board has considered it expedient and appropriate to reaffirm the priority of payment to the creditors of the Corporation with respect to the period commencing immediately after the closing of the transactions with Learning 2000, Inc. described above.
>
> RESOLVED, that the Corporation shall pay its creditors with all available cash therefor in the following order of priority:
>
> First:   to employee obligations,
>
> Second: to current accounts payable necessary to support sales,
>
> Third:   to current portion of the Nations-Bank loan,
>
> Fourth: to other accounts payable,
>
> Fifth:   to non-current portion of Nations-Bank loan,
>
> Sixth:   to non-current accounts payable, including those converted to loans,

Seventh: to debt obligations owing to Larry Clark,

Eighth: to debt obligations owing to the Goodes,

Ninth: to all other debt, pro rata.

Defendants Hagerty, Hanes and Clark as directors of the corporation voted in favor of the resolution. After Goode received a copy of this resolution, he questioned Hagerty about why Clark had been placed ahead of him. Hagerty reminded Goode that Clark made loans to the company at a critical time (in 1991), but he also told Goode that Clark might be persuaded to relinquish his priority.

In a telephone conversation between Goode and Hanes on March 15, 1993, Hanes assured Goode that nothing had changed the Goodes' priority position. (Plaintiffs' Ex. 23.) In a telephone conversation between Goode and Hagerty on August 31, 1994, Hagerty informed Goode that Systems Impact had paid Clark $75,000.00 toward his 1991 "budget loans" and that Clark had moved "to the back of the line for the balance of his money." (Plaintiffs' Ex. 26.) Goode did not object to the $75,000.00 payment to Clark who had made loans to the company at a critical time. However, he was opposed to Clark being ahead of him to any other extent. In fact, Clark had not agreed to give up any priority as to the $200,000.00 loans.

Systems Impact made the following cash payments toward promissory notes on the dates shown:

| Payee | Date | Amount |
|---|---|---|
| John W. Hanes Liquidating Trust | 3–31–95 | $ 26,926.61 |
| Hagerty | 3–31–95 | $ 8,935.54 |
| Clark | 3–31–95 | $ 17,209.91 |
| John W. Hanes Liquidating Trust | 9–21–95 | $ 92,500.00 |
| Hagerty | 8–9–95 | $ 50,400.00 |
| Clark | 11–6–95 | $ 84,000.00 |
| Total | | $279,972.06 |

At the time of these payments all of the individual defendants were directors of Systems Impact. Defendant Hanes filed a chapter 11 bankruptcy petition on January 21, 1993; his plan of reorganization was confirmed on January 31, 1994. Under the plan the John W. Hanes Liquidating Trust is the successor-in-interest to Hanes' unsecured debt claims against Systems Impact. The payments on Hanes' claim were made to the Liquidating Trust, which is also a defendant here.

Systems Impact filed a chapter 11 bankruptcy petition on January 23, 1996, at which time all of the individual defendants were still directors of the corporation. Following confirmation of Systems Impact's plan of reorganization, the company made the following payments to the defendants on April 18, 1997:

| | |
|---|---|
| John W. Hanes Liquidating Trust | $102,750.00 |
| Hagerty | $ 56,100.00 |
| Clark | $ 93,500.00 |
| Total | $252,350.00 |

These payments are being held in escrow, pending the resolution of the Goodes' claims in this adversary proceeding.

The plan of reorganization further provides that defendants will be paid the following amounts over three years:

| | |
|---|---|
| John W. Hanes Liquidating Trust | $ 41,250.00 |
| Clark | $ 37,500.00 |
| Hagerty | $ 22,500.00 |
| Total | $101,250.00 |

Systems Impact made no payments of principal on the Goode's notes prior to its filing bankruptcy. The claims of the Goodes have been allowed in the Systems Impact chapter 11 case in a total amount of $681,861.95.

Additional findings of fact are included in the discussion section of this opinion.

*Discussion And Conclusions*

The Goodes filed this adversary proceeding with a three count complaint requesting the court to do the following:

Count I   Enforce System Impact's subordination resolution of February 23, 1990, as a subordination agreement pursuant to 11 U.S.C. § 510(a), and subordinate the claims of the defendants to the Goodes in the Systems Impact bankruptcy.

Count II   Alternatively, equitably subordinate the defendants' claims to the Goodes pursuant to 11 U.S.C. § 510(c).

Count III   Award the Goodes' damages which resulted from the defendants' breach of the subordination agreement.

In essence, the Goodes ask the court to order the chapter 11 debtor Systems Impact to pay

the Goodes all sums due the defendants based upon their claims in the case.

*Count I Enforcement of the "subordination agreement."*

*Count III Breach of the "subordination agreement."*

Code § 510(a) provides that

(a) A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.

11 U.S.C. § 510(a).

■ The Goodes seek to enforce the Systems Impact directors' resolution of February 23, 1990, (in combination with the resolution of March 31, 1992) as a subordination agreement. The 1990 resolution provided

RESOLVED, that if all, or substantially all, of the assets of the Company should be sold for cash, marketable securities, or notes, of if any transaction is consummated which has substantially the same economic effect as such a sale:

1. The Company will simultaneously with the consummation of any such transaction, repay the Goode notes with accrued interest to the maximum extent funds are available before any other obligations to unsecured noteholders or shareholders are met.

(Plaintiff's Ex. 8.) The 1992 resolution gave priority as to Systems Impact's noteholders first to Clark and then to the Goodes.

It is the Goodes' position that Systems Impact's agreement with the Discovery Channel for the Learning 2000 transaction was the "trigger" which activated the subordination resolution and is a basis for judgment against the defendants.

■ A subordination agreement requires three necessary parties: (1) *common debtor*, (2) a *junior creditor* who agrees to be subordinate, and (3) a *senior creditor* who acquires priority. See *Sumitomo Trust & Banking Co., Ltd. v. Holly's, Inc. (Matter of Holly's, Inc.),* 140 B.R. 643, 668 (Bankr.W.D.Mich. 1992). Here, the court will consider whether a subordination agreement exists under a "contract theory." *Id.* 140 B.R. at 668–669.

Goode argues that the "defendants' votes in favor of the resolutions demonstrated their personal agreement that their debt should be subordinated to the Goodes' debt." (Plaintiff's Post–Trial Brief, page 11.) In other words when the directors voted in favor of the resolutions they effectively agreed as the junior creditors to subordinate to the Goodes and formed a subordination agreement.

The defendants assert that there was never a subordination agreement here as they did not personally agree to subordinate their notes to the Goodes just because as directors they voted for the subordination resolutions. Rather, they voted as representatives or fiduciaries of the corporation and not in their individual capacities. Moreover, they argue, Goode did not approach the directors as individuals and never asked them to agree to subordinate their notes to his.

Although there is a certain common sense appeal to plaintiffs' position that a subordination agreement was formed, there are complications to this argument which persuade the court that these counts of the complaint must fail. First there is the fact that Hagerty was not a director in 1990 and thus could not have agreed to be subordinated at that time. Another complication, which is ignored in the Goodes' argument, is that the 1992 resolution gives Clark priority over the Goodes in recognition of Clark's having made an urgently needed loan to Systems Impact in 1991. This priority seems proper, certainly as to the amount of $200,000.00 loaned by Clark. In fact, at trial Mr. Goode agreed that a $75,000.00 repayment to Clark in 1994 had been appropriate. Under all the circumstances of the case, the court concludes that the defendants' votes on the subordination resolutions did not constitute personal agreement by them to a subordination agreement with the plaintiffs. Rather, they acted only in their capacities as directors.

■ Finally, even if there had been a binding subordination agreement it was contingent. The court has found as a fact previously that the Discovery Channel transaction of April 1, 1992, did not trigger the subordination provisions, and these provisions are not a basis for judgment against the defen-

dants on the theory of a subordination agreement. Because the contingency did not happen, the agreement cannot be enforced as such under § 510(a).

Accordingly, the Goodes cannot prevail under either Counts I or III.

*Count II Equitable Subordination.*

As an alternative argument, the Goodes assert that they are entitled to equitable subordination of the defendants' claims under Code § 510(c)(1), which provides:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
>
> > (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim....

11 U.S.C. § 510(c)(1).

To recap, plaintiffs rely on the following circumstances to support their equitable subordination argument.

The subordination resolution of February 23, 1990, was Systems Impact's response to the Goodes' threats to bring legal action to collect their notes. The resolution was also a response to the Goodes' concerns over not having security for the notes. Two of the defendants, Hanes and Clark, were directors at the time of the resolution and voted in favor. The resolution reassured the Goodes that their notes would be paid ahead of the other noteholders.

In December 1991, the Goodes learned about the Discovery Channel transaction and that they would be required to sign a standstill agreement which prevented their commencing any collection action for at least three years. The agreement also contained a provision stating that Systems Impact's noteholders would be paid pro rata from other income of the corporation under an agreement with Phoenix Films.

Goode was concerned about the effect of the standstill agreement on the subordination resolution. However, he received reassurances of his position from officials of Systems Impact. On January 2, 1992, defendant Hanes, as chairman of the board, wrote

Goode that the Discovery transaction would trigger the subordination resolution and stating further

> Accordingly, the Goode notes will thereupon assume a priority above obligations to unsecured noteholders and shareholders as funds become available for debt service. As I noted, this will occur principally—probably entirely—as a result of sales under the Phoenix agreement. The Company, of course, will recognize this priority in any debt-service payments it is in a position to make.

(Plaintiff's Ex. 10.)

Then on February 18, 1992, Douglass Sawyer, president of Systems Impact, wrote a letter, to Goode and apparently to all noteholders of the corporation, stating that the standstill agreement "does not, in any way, alter any preexisting priorities of debt payment agreed among the company and certain of its creditors." The letter referred to two priority agreements, the first regarding Hanes' $200,000.00 loans, to "be repaid with the first monies available" and second, the company's 1990 agreement that the Goodes "would have a priority of repayment over other existing unsecured notes of the company...." (Plaintiff's Ex. 11.)

The Goodes relied on these unequivocal statements when they signed the standstill agreement on March 26, 1992. Also there followed the Systems Impact directors' resolution of March 31, 1992, which to some extent reaffirmed the 1990 resolution by stating that the Goodes were to have a priority of payment over all of the corporation's noteholders except for defendant Clark. Finally, Goode was reassured about his priority in telephone conversations with Hanes on March 15, 1993, and Hagerty on August 31, 1994.

Notwithstanding the promises of priority made to Goode during these years, Systems Impact made substantial note payments to the defendant directors of the corporation during 1995. The circumstances surrounding these payments are not revealed in the record. Thus the court does not know why the debtor made payments toward the directors' notes and ignored its previous subordination resolutions concerning the Goodes' notes.

No principal note payments were ever made to the Goodes before Systems Impact filed bankruptcy on January 23, 1996.

The equitable subordination provisions of § 510(c) incorporate court-made doctrine based in part upon decisions of the United States Supreme Court. *See U.S. v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 1526, 134 L.Ed.2d 748 (1996); *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Because the statute specifies its applicability only as "under principles of equitable subordination," this determination remains subject to court made rules to be applied to the facts of individual cases. The issue has been considered in numerous cases both before and after the enactment of § 510(c) in the present Bankruptcy Code.

■ In perhaps the most often cited of these cases, *Benjamin v. Diamond (Matter of Mobile Steel Co.),* 563 F.2d 692, 699–700 (5th Cir.1977), the Fifth Circuit summarized previous case holdings and noted that there are three conditions or requirements for equitable subordination. These conditions, which were tacitly approved by the Supreme Court in the *Noland* case, 116 S.Ct. at 1526, are as follows:

(i) The claimant must have engaged in some type of inequitable conduct.

．　　．　　．　　．　　．

(ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.

．　　．　　．　　．　　．

(iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

．　　．　　．　　．　　．

563 F.2d at 700.

■ *See also, EEE Commercial Corp. v. Holmes (In re ASI Reactivation, Inc.),* 934 F.2d 1315, 1321 (4th Cir.1991); 4 L. King, *Collier On Bankruptcy,* ¶ 510.05[1]. In order to subordinate a debt under § 510(c), the bankruptcy court must make specific findings for each of the above conditions.

*1. Whether Defendants Engaged in Inequitable Conduct.*

This is the main issue. Plaintiffs argue in essence that the defendants as directors acted inequitably by accepting payments from the debtor in disregard of the subordination resolutions. This argument apparently extends to the 1995 note payments as well as to sums received and scheduled to be received by defendants under the debtor's chapter 11 plan.

Defendants argue that the inequitable conduct condition requires evidence that they acted in a "wrongful manner;" this, they assert, has not been shown.

■ "It is difficult to define the boundaries of inequitable conduct ..." under the first condition for equitable subordination. *Fabricators, Inc. v. Technical Fabricators, Inc. (Matter of Fabricators, Inc.),* 926 F.2d 1458, 1467 (5th Cir.1991). Certainly, "fraud, illegality and breach of fiduciary duties" must be included. *Id.*

One key factor to be considered in this case is the status of the individual defendants as insiders of the debtor corporation. With but one exception, each of the individual defendants was a director of the corporation when the subordination resolutions were passed, when the 1995 note payments were made and when the corporation filed bankruptcy. (The exception, which the court finds not significant to the result to be reached, was that Hagerty was not a director when the resolution of February 23, 1990, was passed.) Thus, during the most critical times to this case these defendants were "insiders" under the code definition. 11 U.S.C. § 101(31)(B)(i). Indeed, throughout this case the defendants have asserted that their actions were undertaken as fiduciaries for the corporation.

■ It is fundamental in the context of § 510(c) that the conduct of insiders of a corporation is subject to closer examination than that of noninsiders.

Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to

prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. *Pepper v. Litton,* 60 S.Ct. at 245 (holding that the powers of directors and dominant or controlling stockholders are powers in trust). *See also Summit Coffee Co. v. Herby's Foods, Inc. (Matter of Herby's Foods, Inc.),* 2 F.3d 128, 131 (5th Cir.1993).[1]

■ The initial burden is on a plaintiff to present "material evidence of unfair conduct" by an insider; when this is done the insider must prove "the good faith and fairness of its dealings with the debtor." *Allied Eastern States Maintenance Corp. v. Miller (Matter of Lemco Gypsum, Inc.),* 911 F.2d 1553, 1557 (11th Cir.1990), *reh. denied,* 930 F.2d 925 (11th Cir.1991). *See also Pepper v. Litton,* 60 S.Ct. at 245; (The insider must show the "inherent fairness from the viewpoint of the corporation and those interested therein."). *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.),* 850 F.2d 1275, 1282 & n. 13 (8th Cir.1988) ( [Plaintiff] "need prove only that [the insider] breached a fiduciary duty or engaged in conduct that is somehow unfair...."); *Machinery Rental, Inc. v. Herpel (Matter of Multiponics, Inc.),* 622 F.2d 709, 714 (5th Cir.1980) (plaintiff must present "enough proof of unfairness to warrant subordination"). *White v. Coon (In re Purco, Inc.),* 76 B.R. 523, 530 (Bankr.W.D.Pa.1987) ("Where the claimant is a fiduciary of the debtor, the courts have generally required a showing of fraud, overreaching, inequitable conduct or, in some instances, the violation of the rules of fair play and good conscience by the claimant, in order to warrant subordination of a particular claim....").

Debtor made the following note payments in 1995 prior to its bankruptcy filing:

| | |
|---|---|
| Hanes Trust | $119,426.61 |
| Hagerty | 59,335.54 |
| Clark | 101,209.91 |

At the time these payments were made, each individual defendant was a director of the debtor. The defendants have also received substantial payments toward their claims in the debtor's chapter 11 case.

No payments were made on the Goodes' notes before the debtor filed bankruptcy on January 23, 1996. In the debtor's confirmed chapter 11 plan, the two subordination resolutions have not been considered.

■ Under the standards prescribed by the case holdings the court must decide whether the corporation's 1995 payments to defendants were sufficiently unfair to the Goodes so as to shift the burden to the defendants to demonstrate the "inherent fairness" of their conduct. *Pepper v. Litton,* 60 S.Ct. at 245. A similar ruling must be made with respect to payments received by defendants under debtor's chapter 11 plan.

*A. The 1995 Note Payments.*

■ The conclusion is inescapable under all the circumstances that the Goodes were treated unfairly when the debtor made note payments to the defendant directors without regard to the earlier subordination resolutions or to the repeated assurances that had been made to Mr. Goode.[2] Since the time of the first resolution the Goodes had relied upon these actions to withhold enforced collection of their notes. While it may be a matter of semantics, the cases do not support defendants' argument that plaintiffs must prove defendants committed "wrongful acts" or engaged in fraudulent conduct. Accordingly, the burden is on the defendants to justify their actions. As noted previously, there is no evidence here surrounding the

---

**1.** A director's status as an insider under the definition of Code § 101(31)(B) is sufficient to invoke this principle; it is not necessary that the director act as an alter ego of the debtor corporation. L. King, 4 *Collier On Bankruptcy,* ¶ 510.05[3][b].

**2.** Clark's counsel in a post trial memorandum asserts in effect that the corporate decision to make the 1995 payments was made by the debtor's bookkeeper, Greg Trilling. The court has been unable to find evidence for this argument in the trial record. ' However, even if Trilling did have discretion on his own to make the payments, that would not make receipt of such substantial payments by the directors of the corporation less unfair to the Goodes. A corporation is managed by its directors and officers and not by its bookkeeper, and the defendants cannot so easily relieve themselves from responsibility for the payments.

1995 note payments, and except as discussed below the defendants have failed to carry their burden to demonstrate that their receipt of payments was fair to the Goodes.

Except for defendant Clark. Because he also had been given priority over the Goodes in the resolution of March 31, 1992, the court cannot find fault with his note receipts in 1995.[3]

The court therefore finds that as to the 1995 payments received by defendants Hanes and Hagerty, they "engaged in some type of inequitable conduct" when as directors of the debtor they allowed payments to be made to them in contravention of two corporate resolutions. *Mobile Steel Co.*, 563 F.2d at 699–700.[4]

*B. Payments to Defendants in Chapter 11 Case.*

■ Claims should be subordinated under § 510(c)(1) "only to the extent necessary to offset the" injury caused by the inequitable conduct. *Mobile Steel Co.*, 563 F.2d at 701.

■ The court can assume that the post petition payments received by defendants were in accordance with debtor's confirmed chapter 11 plan. However, the court has no basis to consider the plan payments as evidence of any unfair conduct. Therefore, plaintiffs are entitled to no subordination for plan payments received by defendants.

*2. Whether Defendants' inequitable conduct resulted in injury to Plaintiffs or conferred an unfair advantage on the Defendants.*

It is obvious from the court's prior findings that the 1995 receipt by Hanes and Hagerty of payments which the corporation had twice promised would be made to the Goodes ahead of them conferred an unfair advantage on these two defendants. This resulted in an injury to the Goodes when the corporation was forced to file bankruptcy before making any note payments to the Goodes. Thus in debtor's bankruptcy case, Hanes' and Hagerty's claims based upon the indebtedness of their promissory notes were reduced by the 1995 payments. The payments therefore put them in position to receive a higher recovery than the Goodes in the debtor's chapter 11 case.

■ Under equitable subordination:

All or part of a claim may be subordinated. A claim may be subordinated to all or part of another allowed claim. Thus depending on the circumstances, a subordinated claim may be relegated to the bottommost rung of claims or may be simply allowed after rather than ahead of the claim of a party who has in some way been injured by the conduct of the holder of the subordinated claim.

L. King, 4 *Collier On Bankruptcy*, ¶ 510.05, page 510.13.

To the extent of Hanes' and Hagerty's note receipts in 1995, the court finds that their claims in the bankruptcy case will be subordinated to the Goodes' claim.

*3. Whether equitable subordination of Hanes' and Hagerty's claims to the Goodes is inconsistent with provisions of bankruptcy law.*

Finally, the court must find that equitable subordination in this case is in "harmony with" bankruptcy law. *Multiponics*, 622 F.2d at 721. As a court of equity, this court has found that under well established principles of equitable subordination two of the defendants' claims should be subordinated to the plaintiffs' claims. *Id.* This holding is further authorized by Code § 510(c)(1) and is not inconsistent with other provisions of law.

In summary, the court finds that in the instant bankruptcy case the claims of Hanes or Hanes liquidating trust and Hagerty in the respective amounts of $119,426.61 and $59,335.54 will be subordinated to payment

---

3. Clark had made an emergency loan to debtor of $200,000.00. The corporation was justified in according him priority over the Goodes, at least up to $200,000.00. Clark had received payments totaling $75,000.00 in 1994. Thus total payments to him through 1995 were less than $200,000.00.

4. The defendants have argued that the standstill agreement of April 1, 1992, replaced the subordination resolutions. Although the court has held to the contrary, even under the standstill agreement the Goodes were entitled to pro rata payment with the defendants.

toward the claims of the plaintiffs. In other words in the distribution of dividends to creditors in their class the Goodes will stand in the shoes of Hanes liquidating trust and Hagerty to the extent of these sums.

Plaintiffs' counsel is requested to submit a judgment order in conformity with this opinion.