## UNITED STATES *v.* NOLAND, TRUSTEE FOR DEBTOR FIRST TRUCK LINES, INC.

No. 95–323.  Argued March 25, 1996—Decided May 13, 1996

536

SOUTER, J., delivered the opinion for a unanimous Court.

*Kent L. Jones* argued the cause for the United States. With him on the briefs were *Solicitor General Days, Assistant Attorney General Argrett, Deputy Solicitor General Wallace, Gary D. Gray,* and *Edward T. Perelmuter.*

*Raymond J. Pikna, Jr.,* argued the cause for respondent. With him on the brief were *Thomas R. Noland* and *Gregory P. Garner.*

JUSTICE SOUTER delivered the opinion of the Court.

The issue in this case is the scope of a bankruptcy court's power of equitable subordination under 11 U. S. C. § 510(c). Here, in the absence of any finding of inequitable conduct on the part of the Government, the Bankruptcy Court subordinated the Government's claim for a postpetition, noncompensatory tax penalty, which would normally receive first priority in bankruptcy as an "administrative expense," §§ 503(b)(1)(C), 507(a)(1). We hold that the bankruptcy court may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities.

In April 1986, First Truck Lines, Inc., voluntarily filed for relief under Chapter 11 of the Bankruptcy Code, and in the subsequent operation of its business as a debtor-in-possession incurred, but failed to discharge, tax liabilities to the Internal Revenue Service (IRS). First Truck moved to convert the case to a Chapter 7 liquidation in June 1988, and in August 1988 the Bankruptcy Court granted that motion and appointed respondent Thomas R. Noland as trustee. The liquidation of the estate's assets raised insufficient funds to pay all of the creditors.

After the conversion, the IRS filed claims for taxes, interest, and penalties that accrued after the Chapter 11 filing but before the Chapter 7 conversion, and although the parties agreed that the claims for taxes and interest were entitled to priority as administrative expenses, §§ 503(b), 507(a)(1), and 726(a)(1),[1] they disagreed about the priority to be given tax penalties. The Bankruptcy Court determined that the penalties (like the taxes and interest) were administrative expenses under § 503(b) but held them to be subject to equitable subordination under § 510(c).[2] In so doing, the court read that section to provide authority not only to deal with inequitable conduct on the Government's part, but also to adjust a statutory priority of a category of claims. The Bankruptcy Court accordingly weighed the relative equities that seemed to flow from what it described as "the Code's preference for compensating actual loss claims," and subordinated the tax penalty claim to those of the general unsecured creditors. *In re First Truck Lines, Inc.*, 141 B. R. 621, 629 (SD Ohio 1992). The District Court affirmed. *Internal Revenue Service* v. *Noland,* 190 B. R. 827 (SD Ohio 1993).

After reviewing the legislative history of the 1978 revision to the Bankruptcy Code and several recent appeals cases on equitable subordination of tax penalties, the Sixth Circuit affirmed, as well. *In re First Truck Lines, Inc.*, 48 F. 3d 210 (1995). The Sixth Circuit stated that it did

---

[1] Section 507(a)(1) provides, in relevant part: "(a) The following expenses and claims have priority in the following order: (1) First, administrative expenses allowed under section 503(b) of this title . . . ." Under § 503(b)(1), administrative expenses include "any tax . . . incurred by the estate" (with certain exceptions not relevant here), as well as "any fine [or] penalty . . . relating to [such] a tax . . . ." Section 726(a)(1) adopts the order of payment specified in § 507 for Chapter 7 proceedings.

[2] Section 510(c) provides that "the court may . . . under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim . . . ."

"not see the fairness or the justice in permitting the Commissioner's claim for tax penalties, which are not being assessed because of pecuniary losses to the Internal Revenue Service, to enjoy an equal or higher priority with claims based on the extension of value to the debtor, whether secured or not. Further, assessing tax penalties against the estate of a debtor no longer in existence serves no punitive purpose. Because of the nature of postpetition, nonpecuniary loss tax penalty claims in a Chapter 7 case, we believe such claims are susceptible to subordination. To hold otherwise would be to allow creditors who have supported the business during its attempt to reorganize to be penalized once that effort has failed and there is not enough to go around." *Id.*, at 218.

See also *Burden* v. *United States*, 917 F. 2d 115, 120 (CA3 1990); *Schultz Broadway Inn* v. *United States*, 912 F. 2d 230, 234 (CA8 1990); *In re Virtual Network Services Corp.*, 902 F. 2d 1246, 1250 (CA7 1990). We granted certiorari to determine the appropriate scope of the power under the Bankruptcy Code (Code) to subordinate a tax penalty, 516 U. S. 1005 (1995), and we now reverse.

The judge-made doctrine of equitable subordination predates Congress's revision of the Code in 1978. Relying in part on our earlier cases, see, *e. g., Comstock* v. *Group of Institutional Investors*, 335 U. S. 211 (1948); *Pepper* v. *Litton,* 308 U. S. 295 (1939); *Taylor* v. *Standard Gas & Elec. Co.*, 306 U. S. 307 (1939), the Fifth Circuit, in its influential opinion in *In re Mobile Steel Co.*, 563 F. 2d 692, 700 (1977), observed that the application of the doctrine was generally triggered by a showing that the creditor had engaged in "some type of inequitable conduct." *Mobile Steel* discussed two further conditions relating to the application of the doctrine: that the misconduct have "resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant," and that the subordination "not be incon-

sistent with the provisions of the Bankruptcy Act." *Ibid.* This last requirement has been read as a "reminder to the bankruptcy court that although it is a court of equity, it is not free to adjust the legally valid claim of an innocent party who asserts the claim in good faith merely because the court perceives that the result is inequitable." DeNatale & Abram, The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors, 40 Bus. Law. 417, 428 (1985). The District Courts and Courts of Appeals have generally followed the *Mobile Steel* formulation, *In re Baker & Getty Financial Services, Inc.,* 974 F. 2d 712, 717 (CA6 1992).

Although Congress included no explicit criteria for equitable subordination when it enacted § 510(c)(1), the reference in § 510(c) to "principles of equitable subordination" clearly indicates congressional intent at least to start with existing doctrine. This conclusion is confirmed both by principles of statutory construction, see *Midlantic Nat. Bank* v. *New Jersey Dept. of Environmental Protection,* 474 U. S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications") (citation omitted), and by statements in the legislative history that Congress "intended that the term 'principles of equitable subordination' follow existing case law and leave to the courts development of this principle," 124 Cong. Rec. 32398 (1978) (Rep. Edwards); see also *id.,* at 33998 (Sen. DeConcini). In keeping with pre-1978 doctrine, many Courts of Appeals have continued to require inequitable conduct before allowing the equitable subordination of most claims, see, *e. g., In re Fabricators, Inc.,* 926 F. 2d 1458, 1464 (CA5 1991); *In re Bellanca Aircraft Corp.,* 850 F. 2d 1275, 1282–1283 (CA8 1988), although several have done away with the requirement when the claim in question was a tax penalty.

See, *e. g., Burden, supra,* at 120; *Schultz, supra,* at 234; *In re Virtual Network, supra,* at 1250.

Section 510(c) may of course be applied to subordinate a tax penalty, since the Code's requirement that a Chapter 7 trustee must distribute assets "in the order specified in . . . section 507" (which gives a first priority to administrative expense tax penalties) is subject to the qualification, "[e]xcept as provided in section 510 of this title . . . ." 11 U. S. C. § 726(a). Thus, "principles of equitable subordination" may allow a bankruptcy court to reorder a tax penalty in a given case. It is almost as clear that Congress meant to give courts some leeway to develop the doctrine, 124 Cong. Rec. 33998 (1978), rather than to freeze the pre-1978 law in place. The question is whether that leeway is broad enough to allow subordination at odds with the congressional ordering of priorities by category.

The answer turns on Congress's probable intent to preserve the distinction between the relative levels of generality at which trial courts and legislatures respectively function in the normal course. Hence, the adoption in § 510(c) of "principles of equitable subordination" permits a court to make exceptions to a general rule when justified by particular facts, cf. *Hecht Co.* v. *Bowles,* 321 U. S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case"). But if the provision also authorized a court to conclude on a general, categorical level that tax penalties should not be treated as administrative expenses to be paid first, it would empower a court to modify the operation of the priority statute at the same level at which Congress operated when it made its characteristically general judgment to establish the hierarchy of claims in the first place. That is, the distinction between characteristic legislative and trial court functions would simply be swept away, and the statute would delegate legislative revision, not authorize equitable exception. We find such a reading im-

probable in the extreme. "Decisions about the treatment of categories of claims in bankruptcy proceedings . . . are not dictated or illuminated by principles of equity and do not fall within the judicial power of equitable subordination . . . ." *Burden*, 917 F. 2d, at 122 (Alito, J., concurring in part and dissenting in part).

Just such a legislative type of decision, however, underlies the Bankruptcy Court's reordering of priorities in question here, as approved by the District Court and the Court of Appeals. Despite language in its opinion about requiring a balancing of the equities in individual cases, the Court of Appeals actually concluded that "postpetition, nonpecuniary loss tax penalty claims" are "susceptible to subordination" by their very "nature." 48 F. 3d, at 218. And although the court said that not every tax penalty would be equitably subordinated, *ibid.*, that would be the inevitable result of consistent applications of the rule employed here, which depends not on individual equities but on the supposedly general unfairness of satisfying "postpetition, nonpecuniary loss tax penalty claims" before the claims of a general creditor.

The Court of Appeals's decision thus runs directly counter to Congress's policy judgment that a postpetition tax penalty should receive the priority of an administrative expense, 11 U. S. C. §§ 503(b)(1)(C), 507(a)(1), and 726(a)(1). This is true regardless of Noland's argument that the Bankruptcy Court made a distinction between compensatory and noncompensatory tax penalties, for this was itself a categorical distinction at a legislative level of generality. Indeed, Congress recognized and employed that distinction elsewhere in the priority provisions: Congress specifically assigned 8th priority to certain compensatory tax penalties, see § 507(a)(8)(G), and 12th priority to prepetition, noncompensatory penalties, see §§ 726(a)(1) and (4).[3]

---

[3] Noland argues that "although the penalties at issue arose postpetition," this claim should be viewed as a prepetition penalty because a "reorganized debtor is in many respects similar to a prepetition debtor . . . [and]

The Sixth Circuit, to be sure, invoked a more modest authority than legislative revision when it relied on statements by the congressional leaders of the 1978 Code revisions, see 48 F. 3d, at 215, 217–218, and it is true that Representative Edwards and Senator DeConcini stated that "under existing law, a claim is generally subordinated only if [the] holder of such claim is guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty or a claim for damages arising from the purchase or sale of a security of the debtor." 124 Cong. Rec. 32398 (1978) (Rep. Edwards); see also id., at 33998 (Sen. DeConcini). But their remarks were not statements of existing law and the Sixth Circuit's reliance on the unexplained reference to subordinated penalties ran counter to this Court's previous endorsement of priority treatment for postpetition tax penalties. See Nicholas v. United States, 384 U. S. 678, 692–695 (1966). More fundamentally, statements in legislative history cannot be read to convert statutory leeway for judicial development of a rule on particularized exceptions into delegated authority to revise statutory categorization, untethered to any obligation to preserve the coherence of substantive congressional judgments.

---

the conversion of [this] case to chapter 7 was tantamount to the filing of a new petition." Brief for Respondent 16, n. 7. But we agree with the Sixth Circuit, see In re First Truck Lines, Inc., 48 F. 3d 210, 214 (1995), that the penalties at issue here are postpetition administrative expenses pursuant to 11 U. S. C. §§ 348(d), 503(b)(1). Although § 348(d) provides that a "claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition," the claim for priority here is "specified in section 503(b)" and Congress has already determined that it is not to be treated like prepetition penalties. Noland may or may not have a valid policy argument, but it is up to Congress, not this Court, to revise the determination if it so chooses.

Given our conclusion that the Sixth Circuit's rationale was inappropriately categorical in nature, we need not decide today whether a bankruptcy court must always find creditor misconduct before a claim may be equitably subordinated. We do hold that (in the absence of a need to reconcile conflicting congressional choices) the circumstances that prompt a court to order equitable subordination must not occur at the level of policy choice at which Congress itself operated in drafting the Code. Cf. *In re Ahlswede*, 516 F. 2d 784, 787 (CA9) ("[T]he [equity] chancellor never did, and does not now, exercise unrestricted power to contradict statutory or common law when he feels a fairer result may be obtained by application of a different rule"), cert. denied *sub nom. Stebbins* v. *Crocker Citizens Nat. Bank*, 423 U. S. 913 (1975); *In re Columbia Ribbon Co.*, 117 F. 2d 999, 1002 (CA3 1941) (court cannot "set up a subclassification of claims . . . and fix an order of priority for the sub-classes according to its theory of equity").

In this instance, Congress could have, but did not, deny noncompensatory, postpetition tax penalties the first priority given to other administrative expenses, and bankruptcy courts may not take it upon themselves to make that categorical determination under the guise of equitable subordination. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*