**In the Matter of GORDON SEL–WAY, INC., a Michigan Corporation, Debtor.**

**Gordon Sel–Way, Inc., a Michigan Corporation, Plaintiff,**

v.

**United States of America, Defendant.**

Bankruptcy No. 88–04525.
Adversary No. 93–5372.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Sept. 11, 1998.

John S. Regan, Fitzgerald and Dakmak, P.C., Detroit, MI, for Plaintiff.

Thomas P. Cole, U.S. Department of Justice/Tax Division, Washington, D.C., for Defendant.

### OPINION DENYING THE UNITED STATES OF AMERICA'S CLAIM OF SET–OFF

WALTER SHAPERO, Bankruptcy Judge.

*Introduction*

This matter is before the Court for the determination of whether Federal Unemployment Tax Act ("FUTA") tax refunds owed by the Internal Revenue Service ("IRS") to the Debtor should be paid to the bankruptcy estate or whether these amounts can be set-off against tax liabilities owed currently by the Debtor to the IRS (which are currently somewhere in the neighborhood of $474,000) under the Chapter 11 plan. Debtor has liquidated all assets and distributed all remaining estate funds under the Plan, with the exception of the IRS's claim. All other secured and unsecured creditors have been paid in full compliance under the plan, and the only other outstanding claims (besides

the IRS's) are: (1) Debtor's attorney's fees of approximately $50,000; and (2) Debtor's accountant's fees of approximately $30,000. This Court determines that the IRS does not have the right of set-off and, therefore, must disburse the FUTA tax refunds and any statutory interest earned on those refunds to the Debtor.

### Background and Facts

The relevant facts are as follows:

1. The Debtor filed its Chapter 11 bankruptcy petition on July 1, 1988.

2. On September 13, 1990, the Debtor paid the FUTA taxes owed for 1989.

3. On November 5, 1991, the Debtor paid the FUTA taxes owed for 1987.

4. On March 31, 1992, the Debtor paid its Michigan unemployment taxes, which was the event that triggered the FUTA tax refunds. Under this law, Debtor is entitled to a credit towards its FUTA tax liability for payments paid for state unemployment taxes, and because the FUTA tax liability was paid before the state unemployment taxes, a FUTA tax refund was in order.

5. By an order dated August 17, 1994, this Court found that the Debtor was entitled to FUTA tax refunds for the years 1987 and 1989 (having found the 1988 refunds to be barred on statute of limitations grounds). The amounts were $54,538.28 and $35,699.87, respectively. (That same order found that the IRS preserved the right to collect tax penalties and interest owed by Debtor on the *1987* FUTA taxes paid in 1991.)

6. By Opinion and Order dated July 24, 1995, this Court denied the Debtor's petition for abatement of penalties in relation to the approximate $474,000 tax liability claim and affirmed the Debtor's liability therefor.

7. By Opinion dated December 14, 1995, this Court granted the Debtor's motion to equitably subordinate those same tax penalty claims in relation to the approximate $474,000 tax liability claim.

8. On December 22, 1995, the IRS appealed this Court's subordination decision.

9. On July 7, 1996, the Eastern District Court of Michigan remanded the case back to this Court for further review in light of a recently decided United States Supreme Court case, *United States v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996). The Supreme Court in *Noland* reversed *In re First Truck Lines,* 48 F.3d 210 (6th Cir.1995), the case relied upon by this Court in its December 14, 1995, decision equitably subordinating the IRS's claim.

10. On January 22, 1997, this Court reversed its previous opinion granting the Debtor's motion for equitable subordination in light of *Noland,* thus denying subordination.

11. On January 30, 1997, the Debtor appealed the January 22, 1997, opinion and order denying equitable subordination.

12. On October 28, 1997, the Eastern District Court of Michigan affirmed this Court's January 22, 1997, decision denying subordination. That decision was not further appealed.

### Law and Discussion

The nature and practical meaning of this dispute apparently is that if the FUTA tax refunds are required to be paid to the bankruptcy estate (i.e., the set-off is denied) they will then be available to pay the indicated professional or other such fees or administrative expenses, which presumably have a higher payment priority than the IRS's $474,000 claim. If the set-off is allowed, then such funds will not be available to pay those fees and expenses.

The first determination to be made is what is required to have a right of set-off in a bankruptcy case. That is provided for in 11 U.S.C. § 553(a), which states, in relevant part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

Thus, § 553(a) explicitly requires that the mutual debts owed by the Debtor to the Creditor and vice versa have arisen pre-petition. (What is provided for elsewhere in that section or in 362 and 363 is not relevant to the issue.)

When did the FUTA tax refunds owed to Debtor by the IRS arise? This Court recognizes the general principle that the right to a tax refund will exist pre-petition when the Debtor has overpaid its taxes pre-petition. *Walat Farms, Inc. v. United States (In re Walat Farms)*, 69 B.R. 529, 531 (Bankr. E.D.Mich.1987). In this case, the Debtor did not pay the FUTA tax liability for 1987 and 1989 until November 5, 1991, and September 13, 1990, respectively, well after the July 1, 1988, petition filing date. Moreover, on March 31, 1992, the Debtor paid its Michigan unemployment taxes, which, ultimately, was the event that triggered the FUTA tax refunds. *See* I.R.C. § 3302(a). Under I.R.C. § 3302(a), the Debtor is entitled to a credit towards its FUTA tax liability for payments paid for state unemployment taxes, and since the FUTA tax liability was paid before the state unemployment taxes, a refund was *then* in order. Thus, the FUTA tax liability owed for 1987 and 1989 was paid (overpaid in effect) on November 5, 1991, and September 13, 1990, respectively, and the refund arose thereafter on March 31, 1992, which dates are all after the petition date. Logically analyzed, there can be only three determining facts or events which bear on when the refunds in question "arose". They are: (1) the years for which the FUTA taxes pertained; or (2) the years in which (or dates on which) the FUTA taxes were actually paid; or (3) the dates on which the Michigan unemployment taxes were paid, giving rise to the right to a refund. In the case of the 1987 FUTA tax, the latter two dates occurred post-petition; and in the case of the 1989 FUTA tax, all three dates occurred post-petition. In this Court's view, it is the date that the Michigan unemployment tax was paid, that is the event which first triggered the right to receive a refund of the FUTA taxes previously paid; and, thus, it is the date on which it can be properly said the refund "arose." Therefore, it is quite clear under almost any view, that the rights to the 1987 and 1989 refunds "arose" *post-petition* in both cases.

The $474,000 tax claim clearly arose *pre-petition* and, indeed, there is no argument on that point.

Accordingly, under § 553(a), no right to set-off exists, and the FUTA refunds must be paid to the trustee.

If there can be no agreement as to the amounts required to be paid, the amounts can be determined by the Court upon appropriate application. In that connection, the Court notes (but does not rule) that: (1) the preservation of the right of the IRS to collect tax penalties and interest on the 1987 FUTA taxes paid in 1991, if properly exercised or exercisable in some amount, might conceivably affect the amount of the refund due Debtor; and (2) to the extent the administrative fees and expenses are, or turn out to be, less than the amount of the refunds payable to Debtor, the difference would presumably be payable either to the IRS on its $474,000 claim, or, to some other creditor(s) with greater priority than the IRS.

This Court finds it unnecessary to decide the Debtor's second claim that the IRS waived its right of set-off as this Court has determined that the IRS does not have the right of set-off in this case.

*Conclusion*

For the foregoing reasons, this Court concludes that the IRS must disburse to the Debtor its 1987 and 1989 FUTA tax refunds, together with such interest, if any, as may be provided for in the Internal Revenue Code. This Court will enter an appropriate order.