**In re HOFFINGER INDUSTRIES, INC., Debtor.**

**Leesa Bunch and McMasker Enterprises, Inc., Plaintiffs,**

**v.**

**J.M. Capital Finance, Ltd. and Arrowhead Insurance Co., Defendants.**

**Bankruptcy No. 2:01–BK–20514.
Adversary No. 2:04–AP–1302.**

United States Bankruptcy Court, E.D. Arkansas, Helena Division.

March 4, 2005.

---

James Smith, Susan Gunter, Little Rock, AR, Whitney Davis, for Leesa Bunch and McMasker Enterprises, Inc.

Stephen Gershner, Little Rock, AR, for J.M. Capital Finance, Ltd., Arrowhead Insurance Co. and related parties.

Charles Tucker, Little Rock, AR, Assistant U.S. Trustee.

## ORDER

RICHARD D. TAYLOR, Bankruptcy Judge.

Before the Court is separate defendant J.M. Capital Finance, Ltd.'s [J.M. Capital] motion for summary judgment or, in the alternative, motion for reconsideration filed on November 29, 2004. Also before the Court is the plaintiffs' response to J.M.

Capital's motion for summary judgment and their cross motion for summary judgment filed on January 3, 2005.

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(A)(B)(K) and (O). For the reasons stated below, the Court denies J.M. Capital's motion for summary judgment and motion for reconsideration and the plaintiffs' cross motion for summary judgment.

The plaintiffs, Leesa Bunch and McMasker Enterprises, Inc., filed their complaint on August 6, 2004. In the complaint, the plaintiffs ask the Court to (1) reconsider the liens granted as adequate protection to J.M. Capital as a result of this Court's cash collateral order entered in the main case on November 21, 2001 [the Cash Collateral Order], (2) disallow the claim of J.M. Capital, or reclassify the claim of J.M. Capital from debt to equity (capital contribution), (3) find that J.M. Capital engaged in usurious lending practices in the State of Arkansas, (4) disallow the claim of Arrowhead Insurance Co. [Arrowhead], or reclassify the claim of Arrowhead from debt to equity, (5) in the alternative, offset the claim of Arrowhead against any excess premium redundancy that enures to the debtor's benefit, and/or (6) equitably subordinate the claims and liens of J.M. Capital and Arrowhead to the claims and liens of the plaintiffs and all other creditors of the debtor.

On August 18, 2004, J.M. Capital responded by filing a motion to dismiss. The gravamen of J.M. Capital's motion related to Federal Rule of Bankruptcy Procedure 9024, which incorporates Federal Rule of Civil Procedure 60. According to J.M. Capital, the plaintiffs did not bring their adversary proceeding seeking reconsideration of the November 21, 2001, Cash Collateral Order within the one year time limit allowed by the rule. Further, to the extent the one year time limitation did not apply, the plaintiffs did not seek reconsideration within a reasonable time as required by the rule. On September 30, 2004, the Court heard J.M. Capital's motion to dismiss, after which the Court made specific findings on the record (which will be discussed below) and denied J.M. Capital's motion.

On November 29, 2004, J.M. Capital filed its motion for summary judgment. In its motion, J.M. Capital argues that the November 21, 2001, Cash Collateral Order is a final order from which the plaintiffs did not appeal. Included in that order and the Agreement For Post–Petition Financing and For Use of Cash Collateral [Agreement] was a 90 day period of time during which the debtor could have asserted or otherwise pursued "any and all defenses, affirmative defenses, counterclaims, claims, causes of action, rights of set-off the Debtor may have against JM [Capital] or any other objections to the claims or liens of JM [Capital], whether pre-petition or post-petition ... (the 'JM Causes of Action')." At the conclusion of that 90 day period, if the debtor failed to assert or pursue an action against J.M. Capital, "the Creditor's Committee or other party in interest may assert or otherwise pursue the JM Causes of Action within one hundred twenty (120) days following the entry of the final order ... granting the Motion and approving the use of cash collateral pursuant to this Agreement." The plaintiffs did not assert or otherwise pursue the "JM Causes of Action" and, according to J.M. Capital, are now barred by the doctrine of res judicatá from litigating the claims and liens. J.M. Capital also again argues that Federal Rule of Bankruptcy Procedure 9024 places a one year limitation on reconsideration of a final order based on fraud between the parties or

newly discovered evidence, and that there was no allegation by the plaintiffs of bribery of a judge or manufacture of evidence to allow the unrestricted reconsideration of the order based upon fraud on the court. Finally, it relies on the doctrine of latches to counter the plaintiffs' alleged delay in bringing this action.

On January 3, 2005, the plaintiffs responded to J.M. Capital's motion for summary judgment and included in their response a cross motion for summary judgment. In their cross motion, the plaintiffs argue, inter alia, that the J.M. Capital claim should be equitably subordinated to the general unsecured claims or reclassified from debt to equity. They also suggest that J.M. Capital's claim should be disallowed for failure to attach supporting documentation, and to the extent its proof of claim is overstated.

**Summary Judgment**

Federal Rule of Bankruptcy Procedure 7056 provides that Federal Rule of Civil Procedure 56 applies in adversary proceedings. Rule 56 states that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The burden is on the movant to establish the absence of material fact and identify portions of pleadings, depositions, answers to interrogatories, admissions on file, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party, who must then "go be-

yond the pleadings" and by his or her own affidavits, depositions, answers to interrogatories, and/or admissions on file, designate specific facts to demonstrate that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. When ruling on a summary judgment motion, the Court must view the facts in the light most favorable to the non-moving party and allow that party the benefit of all reasonable inferences to be drawn from the evidence. *Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647, 650 (8th Cir.1996).

**Res Judicata**

J.M. Capital asserts that this Court's November 21, 2001, Cash Collateral Order requires summary judgment on the basis of res judicata. The elements of res judicata are clear in the Eighth Circuit:

> In applying the Eighth Circuit test for whether the doctrine of res judicata bars litigation of a claim, we examine whether (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was a final judgment on the merits, and (3) both cases involve the same cause of action and the same parties.

*Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1014 (8th Cir.2002).

Because the prior judgment referred to by J.M. Capital was entered by this Court, there is no dispute that the first element is met.[1] The parties disagree that the prior judgment was a final judgment on the merits regardless of its caption: Final Order Authorizing Debtor to Use Cash Collateral and Obtain Post–Petition Secured Credit. However, even assuming that it is a final judgment on the merits (although the Court is not making a finding in this

---

1. The November 21, 2001, Cash Collateral Order was entered in the main case by the Honorable James G. Mixon. An order of re-

cusal was entered on November 25, 2003, and the main case was transferred to the Honorable Richard D. Taylor on that date.

regard), the third element cannot be met. The term "cause of action" has evolved in the context of res judicata. In *Ruple v. City of Vermillion, S.D.,* the Eighth Circuit Court of Appeals stated that,

> the phrase "cause of action," or "claim," the term now favored by most courts, has been given a more practical construction. It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same "claim" or "cause of action" for purposes of res judicata.

*Ruple v. City of Vermillion, S.D.,* 714 F.2d 860, 861 (8th Cir.1983).

The third element of res judicata requires that both cases involve the same cause of action and the same parties. The factual predicate of the cash collateral hearing involved determining whether, and under what conditions, the debtor could use cash collateral. The order contained a provision preserving the debtor's rights to explore and pursue certain causes of action. To the extent the plaintiffs are now attempting to assert or pursue *the debtor's* defenses, claims, or causes of action against J.M. Capital, they may be barred. Only a final decision after the trial of this adversary proceeding will clarify that issue. However, the adversary proceeding now before the Court does involve in principal part Leesa Bunch's and McMasker Enterprises, Inc.'s claims and causes of actions against J.M. Capital, not the debtor's.

Applying res judicata in this instance would be inconsistent with the Eighth Circuit's definition of cause of action or claim.

This requires that the issues before each court, or the same court in two separate proceedings, arise out of the same nucleus of operative facts or the same factual predicates.

The principal purpose of a cash collateral hearing is to afford the debtor an opportunity to continue operations post-petition using cash collateral that it otherwise could not use absent court permission. These are almost plenary hearings generally held immediately post-petition.[2] The principle issues relate to the debtor's need to use the cash collateral and its ability to offer adequate protection as required by the code. These hearings occur well before other parties are fully educated and engaged in the case. Often, no discovery has taken place and the parties' efforts are driven by the principle issues being the debtor's survivability and use of cash collateral. Generally, language preserving certain debtor defenses are negotiated by the parties or inserted at the court's insistence based on a clear recognition that at this early stage the parties are not in a position to understand fully the financing relationships involved and conduct full and suitable inquiry. Quite simply, the parties at a cash collateral hearing are not examining the history of the credit, the full relationship of the parties, or even, as now, whether, in fact, the credit in question was ever extended. The focus is on the debtor's need for the collateral with respect to its survivability. Neither Bunch or any other creditor at that hearing was armed with complete discovery or otherwise prepared for a full trial on the merits of the issues now before the Court.

---

**2.** The main case was filed on September 13, 2001. The debtor's application to use cash collateral was filed on October 10, 2001. An interim order allowing the use of cash collateral was entered on October 11, 2001. The hearing on the final order allowing the use of cash collateral was held on November 2, 2001, which resulted in the November 21, 2001, Cash Collateral Order.

At the cash collateral hearing, the only issue before the Court relating to J.M. Capital was the debtor's motion to use J.M. Capital's cash collateral in exchange for a superpriority administrative expense claim. That motion was granted. Included in the order was language that granted parties in interest 30 days after the conclusion of a 90 day "exclusivity" period "to assert or otherwise pursue any and all defenses, affirmative defenses, counterclaims, claims, causes of action, rights of set-off the Debtor may have against JM [Capital] or any other objections to the claims or liens of JM [Capital], whether pre-petition or post-petition .…" These defenses, claims, and causes of actions were referred to as the "JM Causes of Action." The JM Causes of Action were the defenses, claims, and causes of actions that *the debtor* may have had against J.M. Capital. In the absence of the debtor asserting or pursuing the JM Causes of Action, a party in interest could then assert or pursue *the debtor's* defenses, claims, and causes of action against J.M. Capital. Again, only a trial on the merits will clarify this issue.

Further, as the Court noted at the hearing on J.M. Capital's motion to dismiss, J.M. Capital did not even file its proof of claim until after the 120 day period had expired. Even if the plaintiffs had wanted to object to J.M. Capital's claim within the 120 day period mentioned in the November 21, 2001, Cash Collateral Order, they were not able to do so until after the limitations period had run. Without the claim, the present adversary proceeding and the earlier cash collateral hearing could not have been based on the same factual predicate. Accordingly, res judicata is not appropriate in this instance.

### Federal Rule of Bankruptcy Procedure 9024

■ J.M. Capital also raises Federal Rule of Bankruptcy Procedure 9024, which incorporates Federal Rule of Civil Procedure 60, as a basis for its motion for summary judgment. J.M. Capital once again relies on Rule 60 in its argument that any pleading to reconsider this Court's November 21, 2001, Cash Collateral Order should have been brought within one year from the entry of that order. The Court addressed this argument at the hearing on J.M. Capital's motion to dismiss. The Court made it clear that at least two provisions of Rule 9024 (incorporating Rule 60) relate to this adversary proceeding. First, Federal Rule of Civil Procedure 60(b)(6) allows a court to issue relief from an order for "any other reason justifying relief from the operation of the judgment," which must be brought within a reasonable time. The Court found specifically that the adversary proceeding was filed within a reasonable time and stated that "the complaint, taken at its face, which this Court must do and read it in a light most favorable to the initiating party, does state reasons that, if proven, would justify relief from the operation of the judgment."

Second, additional language contained in Rule 60 states that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, ... or to set aside a judgment for fraud on the court." Fed.R.Civ.P. 60(b). The Court stated that "[t]he pleadings, if taken again at face value, would suggest a fraud on the Court for which there would be serious ramifications ... for the filing of a false proof of claim." J.M. Capital argues in its motion for summary judgment that the plaintiffs did not raise any allegations of bribery or manufacturing of evidence—two examples of fraud on the court—in their complaint. However, Federal Rule of Civil Procedure 60 recognizes specifically that

a court can entertain an independent action to investigate fraud on the court without reliance on what the plaintiffs did, or did not, raise in their complaint. *See* 11 U.S.C. § 105.

Further, if the facts alleged in the complaint are true, then the evidence may demonstrate that credit had not been extended as was represented and suggested by the debtor and J.M. Capital at the cash collateral hearing. In that event, it would be clear that the supporting evidence, including testimony, was indeed manufactured and would constitute a serious fraud on the Court that could warrant, depending on the facts and law, substantial civil and criminal penalties, including disgorgement of legal fees.

The Court also addressed two other provisions that would allow it to hear this adversary proceeding. First, to the extent that J.M. Capital's claim is an allowed claim (but not making a finding that it is an allowed claim), Federal Rule of Bankruptcy Procedure 3008 allows a party in interest to move the Court to reconsider an order allowing a claim, which the plaintiffs have done. Second, the code gives the Court the right to reconsider a claim for cause, and allow or disallow the claim according to the equities of the case. 11 U.S.C. § 502(j). At the hearing on J.M. Capital's motion to dismiss, the Court found that "the equities of the case would dictate a reconsideration, and that cause does exist based upon the language stated [in the complaint] . . . ."

**Equitable Subordination**

▪ To the extent J.M. Capital has an allowed claim, the plaintiffs have moved the Court to reclassify the claim from debt to equity, or subordinate that claim based on the principles of equitable subordination. J.M. Capital stated in its motion for summary judgment that "on the merits Plaintiffs' claims for reclassification or eq-

uitable subordination fail as a matter of law." J.M. Capital then lists a series of actions that it states the plaintiffs "cannot show": (1) "that JM Capital, in its arms-length transaction with HI [Hoffinger Industries, Inc.], engaged in any inequitable misconduct"; (2) "that they [the plaintiffs] were damaged as a result of JM Capital's loan to a highly-solvent HI"; and (3) "that reasonable people would believe the HI and JM Capital transaction to be anything less than a true loan transaction, or that it was done with the intent to defraud Bunch."

According to the Eighth Circuit, reclassification of a loan is a mixed question of fact and law. *J.S. Biritz Const. Co. v. Commissioner of Internal Revenue*, 387 F.2d 451, 455 (1967)("The factual question is intertwined with the applicable principles of law that should be accorded recognition in making the factual determination."). Similarly, in discussing equitable subordination, the United States Supreme Court recognized that a court can make exceptions to the general priority rules established by Congress *when justified by particular facts. United States v. Noland,* 517 U.S. 535, 540, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996). In this instance, summary judgment with regard to reclassification and equitable subordination cannot be granted as a matter of law as suggested by J.M. Capital.

**Plaintiffs' Cross Motion For Summary Judgment**

The plaintiffs make four separate arguments in their cross motion for summary judgment relating to the J.M. Capital claim: the claim should be (1) equitably subordinated to a general unsecured claim, (2) reclassified from debt to equity, (3) disallowed for failure to attach supporting documentation, and (4) disallowed to the extent its proof of claim is overstated. As stated above, summary judgment is appro-

priate when there is no genuine issue as to any material fact. Reclassification and equitable subordination turn on facts, the substance of which are disputed by both parties. Equally, the sufficiency and accuracy of J.M. Capital's proof of claim involves questions of fact and law for which the Court will need to hear evidence. Each one of the plaintiffs' arguments for summary judgment are fact-based, and summary judgment is not appropriate.

For the reasons stated above, J.M. Capital's motion for summary judgment and motion for reconsideration and the plaintiffs' cross motion for summary judgment are denied.

IT IS SO ORDERED.