Affirmed by published opinion. Judge MOTZ wrote the opinion, in which Chief Judge WILKINS and Judge KING joined.
OPINION
DIANA GRIBBON MOTZ, Circuit Judge:
At the urging of unsecured creditors, the bankruptcy court recharacterized a parent corporation’s sale of parts to one of its subsidiaries as an equity contribution rather than a debt. The parent corporation appeals the district court’s affirmance of the bankruptcy court’s judgment. We affirm.
I.
Dornier Aviation (North America) (DANA) is a wholly-owned indirect subsidiary of Fairchild Dornier GMBH (GMBH), a German aircraft manufacturer.[1] GMBH sold spare parts to DANA so that DANA could provide warranty and provisioning support to GMBH customers; DANA also resold some of these parts to non-warranty end users for a profit. GMBH billed DANA with specific invoices for the parts it sent;[2] these invoices indi *230 cated that payment was due within 30 days “unless otherwise agreed.” In addition, during annual reconciliations, GMBH and DANA typically signed a “statement of account” that detailed the amounts that DANA owed GMBH. However, despite these written agreements, evidence produced at trial demonstrated that DANA did not pay the invoices within 30 days. In fact, Thomas Brandt, GMBH’s Chief Financial Officer, testified that DANA and GMBH had an agreement that DANA did not have to repay GMBH “until the whole operation turned positive.” Brandt also testified that GMBH treated DANA “specially” because GMBH viewed its relationship with DANA as “a market investment” designed to expand its access to the North American market. Although Brandt explained that GMBH did expect DANA to repay its debts eventually, he also explained that there was no fixed maturity date and that GMBH would not seek repayment until DANA became profitable.
In 2000, GMBH commissioned an audit report from Pricewaterhouse Coopers. The audit calculated that the amount DANA actually owed to GMBH was significantly less than the amount that DANA and GMBH had agreed to three months earlier in the annual reconciliation: while the Pricewaterhouse audit found that DANA owed GMBH approximately $27 million, the annual reconciliation had indicated that DANA owed GMBH approximately $83 million. To account for the difference, the audit explained that GMBH had “assumed” some of DANA’s losses because the two entities “are so close that there is an extensive and also financial dependency of [DANA] to [GMBH].”
In 2002, some of DANA’s former employees filed an involuntary bankruptcy petition against DANA, which DANA did not oppose. The case was converted to a Chapter 11 reorganization, but DANA’s efforts to reorganize were unsuccessful, and DANA eventually proposed a liquidation plan that was confirmed in 2003.[3] GMBH brought an amended claim asserting that DANA owed GMBH approximately $146 million. The Official Committee of Unsecured Creditors (the Committee) objected to this claim, arguing that it should be either recharacterized as equity or equitably subordinated.
Before trial, the bankruptcy court granted partial summary judgment to the Committee and recharacterized about $44 million of GMBH’s. initial claim as equity.[4] After a bench trial on the remaining $102 million claim, the bankruptcy court rejected the Committee’s equitable subordination argument, but found that GMBH had overstated its claim by $10 million and that $84 million of GMBH’s claim — the spare parts claim — should be recharacterized as equity. The recharacterization left GMBH with an allowed claim of $6,475 million.
GMBH appealed the recharacterization determination to the district court, arguing that the bankruptcy court lacked the power to recharacterize claims, erred in applying the recharacterization doctrine to GMBH’s claim, and made a number of factual findings that were clearly erroneous. The district court affirmed the judgment of the bankruptcy court, and GMBH *231 appeals. We review the bankruptcy court’s legal determinations de novo and its factual findings for clear error. See Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 399 (4th Cir.1992).
II.
The Bankruptcy Code instructs a bankruptcy court to allow a creditor’s claim against the bankruptcy estate unless a party in interest objects and a recognized exception applies. See 11 U.S.C. § 502 (2000). The Code sets forth, in § 726, a priority scheme for the distribution of the debtor’s assets. See id. § 726. The statutory priority scheme provides, inter alia, that the claims of all unsecured creditors must be satisfied before holders of equity interests can recover anything from the estate. See id. § 726(a). A bankruptcy court may alter the priority of an allowed claim via equitable subordination; that is, the court may reduce the priority of all or part of an allowed claim if it finds that the creditor engaged in inequitable conduct. See id. § 510(c)(1); see also United States v. Noland, 517 U.S. 535, 538, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996). The Code also authorizes a bankruptcy court to “issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” 11 U.S.C. § 105(a) (2000).
Despite the broad language in § 105(a) and the priority scheme in § 726, GMBH contends that the Bankruptcy Code does not permit a bankruptcy court to recharacterize an allowed claim that is ineligible for equitable subordination. GMBH argues that the bankruptcy court’s decision to re-characterize the $84 million spare parts claim as an equity contribution violates the principle that a bankruptcy court may not use its equitable powers “to alter the substantive rights of the parties.” IRS v. Levy (In re Landbank Equity Corp.), 973 F.2d 265, 271 (4th Cir.1992).
We disagree. In our view, re-characterization is well within the broad powers afforded a bankruptcy court in § 105(a) and facilitates the application of the priority scheme laid out in § 726. The Code establishes a system in which contributions to capital receive a lower priority than loans because “the essential nature of a capital interest is a fund contributed to meet the obligations of a business and which is to be repaid only after all other obligations have been satisfied.” See Diasonics, Inc. v. Ingalls, 121 B.R. 626, 630 (Bankr.N.D.Fla.1990) (quoting Asa S. Herzog & Joel B. Zweibel, The Equitable Subordination of Claims in Bankruptcy, 15 Yand. L.Rev. 83, 94 (1961)). Thus, implementation of the Code’s priority scheme requires a determination of whether a particular obligation is debt or equity. Where, as here, the question is in dispute, the bankruptcy court must have the authority to make this determination in order to preserve the Code’s priority scheme. If the court were required to accept the representations of the claimant, as GMBH appears to argue, then an equity investor could label its contribution a loan and guarantee itself higher priority — and a larger recovery — should the debtor file for bankruptcy. Thus, denying a bankruptcy court the ability to recharacterize a claim would have the effect of subverting the Code’s critical priority system by allowing equity investors to jump the line and reduce the recovery of true creditors. In light of the broad language of § 105(a) and the larger purpose of the Bankruptcy Code, we believe that a bankruptcy court’s power to recharacterize is essential to the proper and consistent application of the Code.
GMBH contends that recharacterization does not exist independently of the bank *232 ruptcy court’s disallowance power under § 502(b) or the court’s equitable subordination power under § 510(c). This argument seems to be rooted in GMBH’s view that recharacterization serves the same purposes and requires the same analysis as disallowance or equitable subordination. In fact, contrary to GMBH’s arguments, recharacterization requires a different inquiry and serves a different function.
Disallowance of a claim under § 502(b) is only appropriate when the claimant has no rights vis-a-vis the bankrupt, ie., when there is “no basis in fact or law” for any recovery from the debtor. Diasonics, 121 B.R. at 631 (quoting Herzon & Zweibel, supra, at 86). When a bankruptcy court disallows a claim, the claim is completely discharged. Id. at 631. By contrast, recharacterization is appropriate when the claimant has some rights vis-á-vis the bankrupt. That is, when a bankruptcy court recharacterizes a claim, it necessarily recognizes the existence of a relationship between the debtor and the claimant, but it determines that the relationship is one of an equity owner rather than a creditor.
In the present case, GMBH presented evidence of a claim arising out of the spare parts transactions between GMBH and DANA. The bankruptcy court initially determined that a portion of this claim met the formal requirements sufficient to support allowance under § 502(b). The allowance inquiry required the bankruptcy court to determine whether there is support in fact and law for a payment of any kind from the bankruptcy estate to the claimant. However, the court correctly noted that the allowance determination “does not end the inquiry.” The recharacterization inquiry then required the court to determine whether the spare parts claim was truly a loan or was instead a capital contribution. The Bankruptcy Code mandates that debt receive a higher priority than equity in distribution. See 11 U.S.C. § 726. Thus, even if a claimant is able to meet § 502’s minimal threshold for allowance of the claim, the bankruptcy court still must look beyond the form of the transaction to determine the claim’s proper priority.
Like disallowance, equitable subordination also differs markedly and serves different purposes from recharacterization. While a bankruptcy court’s re-characterization decision rests on the substance of the transaction giving rise to the claimant’s demand, its equitable subordination decision rests on its assessment of the creditor’s behavior. As the Tenth Circuit has explained, when a claim is equitably subordinated, “[t]he funds in question are still considered outstanding corporate debt, but the courts seek to remedy some inequity or unfairness perpetrated against the bankrupt entity’s other creditors or investors by postponing the subordinated creditor’s right to repayment until others’ claims have been satisfied.” Sender v. Bronze Group, Ltd. (In re Hedged-Invs. Assocs., Inc.), 380 F.3d 1292, 1297 (10th Cir.2004); see also id. (“The doctrine of equitable subordination, by contrast, looks not to the substance of the transaction but to the behavior of the parties involved.”). Thus, although recharacterization and equitable subordination lead to a similar result, they “address distinct concerns” and require a bankruptcy court to conduct different inquiries. See Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.), 432 F.3d 448, 454 (3d Cir.2006). In the case at hand, the bankruptcy court found that equitable subordination was inappropriate because there was no evidence of GMBH engaging in inequitable conduct. This finding does not in any way affect the court’s conclusion that recharacterization was appropriate.
*233 In holding that the recharacterization power is integral to the consistent application of the Bankruptcy Code, we join every other circuit that has considered the question. See SubMicron, 432 F.3d at 454; Hedged-Invs., 380 F.3d at 1297; Bayer Corp. v. Masco Tech, Inc. (In re AutoStyle Plastics, Inc.), 269 F.3d 726, 747-48 (6th Cir.2001). We find totally unpersuasive GMBH’s contention that AutoStyle Plastics and Hedgedr-Investments should be read not as approving recharacterization but as addressing disallowance under § 502(b). As GMBH itself concedes, neither of those cases, nor SubMicron, even mentions disallowance or § 502(b). See Brief of Appellant at 17 n. 6. Nor do any of these cases somehow implicitly support GMBH’s position; rather, they conclude that in an appropriate case a bankruptcy court, wholly apart from § 502(b), can properly recharacterize a claim. See Hedged-Invs., 380 F.3d at 1297-1300; AutoStyle Plastics, 269 F.3d at 747-53.[5]
A bankruptcy court’s equitable powers have long included the ability to look beyond form to substance, see Pepper v. Litton, 308 U.S. 295, 305, 60 S.Ct. 238, 84 L.Ed. 281 (1939), and we believe that the exercise of this power to recharacterize is essential to the implementation of the Code’s mandate that creditors have a higher priority in bankruptcy than those with an equity interest. See In re Cold Harbor Assocs., 204 B.R. 904, 915 (Bankr.E.D.Va. 1997) (“This Court is not required to accept the label of ‘debt’ or ‘equity’ placed by the debtor upon a particular transaction, but must inquire into the actual nature of a transaction to determine how best to characterize it.”). Accordingly, we reject GMBH’s argument that a bankruptcy court may only exercise its power to re-characterize a claim by disallowing the claim under § 502(b) or equitably subordinating the claim under § 510(c).
III.
GMBH maintains in the alternative that the bankruptcy court erred in its application of the recharacterization doctrine to GMBH’s claims. The factors a court may consider in determining whether it should recharacterize a claim include:
(1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation’s ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.
*234 AutoStyle Plastics, 269 F.3d at 749-50.[6] These factors all speak to whether the transaction “appears to reflect the characteristics of ... an arm’s length negotiation.” Id. at 750 (quoting Cold Harbor, 204 B.R. at 915) (amendment in original). This test is a highly fact-dependent inquiry that will vary in application from case to case.
“None of these factors is dis-positive and their significance may vary depending upon circumstances.” HedgedInvs., 380 F.3d at 1298-99. As the court noted in SubMicron Systems, “[n]o mechanistic scorecard suffices. And none should, for Kabuki outcomes elude difficult fact patterns.” 432 F.3d at 456. We think it important to note that a claimant’s insider status and a debtor’s undercapitalization alone will normally be insufficient to support the recharacterization of a claim. In many cases, an insider will be the only party willing to make a loan to a struggling business, and recharacterization should not be used to discourage good-faith loans. However, when other factors indicate that the transaction is not a loan at all, recharacterization is appropriate to ensure the consistent application of the Bankruptcy Code.
In this case, the bankruptcy court considered all of the above factors in analyzing the spare parts transaction between GMBH and DANA. The court determined that, while some aspects of the transaction were consistent with a loan, the transaction on the whole was more consistent with a capital contribution. The court found particularly significant (1) GMBH’s insider status, (2) “the lack of a fixed maturity date” for the purported loan, (3) the fact that DANA would not be required to pay until it became profitable, (4) DANA’s “long history of unprofitability and the fact that its liabilities after the corporate restructuring far exceeded its assets,” and (5) GMBH’s assumption of DANA’s losses. We believe that these facts adequately support the bankruptcy court’s recharacterization decision here.
GMBH raises several arguments to dispute the bankruptcy court’s conclusion. We find none of them persuasive. First, GMBH maintains that if recharacterization can apply at all, it may only apply to advances of funds and not to transactions involving inventory. According to GMBH, a transfer of inventory cannot constitute an equity investment. The district court rejected this contention, finding that “this argument again puts form over substance, as the relationship between GMBH and DANA with regard to the debt also could be viewed as ‘loan’ of the funds that otherwise would be due under the sales arrangement.” We agree with the district court. If we were to adopt GMBH’s position, that would simply invite equity investors to structure their capital contributions as “sales of inventory” thereby undermining the purposes of recharacterization. Cf. Brown Shoe Co., Inc. v. Comm’r, 339 U.S. 583, 589, 70 S.Ct. 820, 94 L.Ed. 1081 (1950) (finding that real property and buildings transferred to corporation constituted “contributions to capital” under the Tax Code).
GMBH also argues that the bankruptcy court erred in considering events that took place after 1999, by which point most of the spare parts transactions had already occurred. In support of this argument, GMBH points out that, according to *235 the courts that have recognized the doctrine, “[r]echaracterization is only appropriate where the circumstances show that a debt transaction was ‘actually an equity contribution [] ab initio.’ ” AutoStyle Plastics, 269 F.3d at 747-48 (quoting Cold Harbor, 204 B.R. at 915) (alteration in original). Here, the bankruptcy court did consider GMBH’s continuing failure to collect the alleged debts owed as well as GMBH’s 2001 management report indicating that it had “taken over” many of DANA’s losses. However, we again agree with the district court’s conclusion that this “use of later events to understand GMBH’s broader intent” accords with the nature of recharacterization analysis. GMBH’s behavior toward DANA after 1999 constitutes relevant evidence of GMBH’s intent at the time the earlier transactions occurred. Accordingly, the bankruptcy court did not err in relying in part on post-1999 evidence of GMBH’s intent.
Additionally, GMBH insists that the bankruptcy court erred when it relied upon the Pricewaterhouse audit’s statement that GMBH had “assumed” losses arising out of its spare parts transactions with DANA. The bankruptcy court found GMBH’s decision to assume DANA’s losses significant because it was “an acknowledgment that the sums which GMBH had been carrying on its books as intercompany debt could not be characterized to outside investors as ordinary debt receivables.” GMBH asserts that, because it never intended to forgive DANA’s debts, the bankruptcy court should not have considered the audit’s discussion of GMBH’s assumption of DANA’s losses.[7] The district court found that “an eventual expectation of repayment does not conflict with the bankruptcy court’s finding that on balance, the substance of the relationship represented a capital contribution designed to prop up the struggling subsidiary.” After reviewing the evidence underlying the bankruptcy court’s analysis, we reach the same conclusion. Given the totality of the circumstances in this case, we believe the bankruptcy court’s consideration of and reliance upon GMBH’s assumption of losses was appropriate because this fact further demonstrates that GMBH did not intend to recover from DANA until DANA became profitable. Although this single piece of evidence alone is not outcome determinative, the bankruptcy court properly considered and weighed it as relevant evidence.
IV.
Finally, GMBH challenges many of the bankruptcy court’s factual findings. We may only overturn the bankruptcy court’s findings of fact if they are clearly erroneous. See Johnson, 960 F.2d at 399. Deference to the bankruptcy court’s findings is particularly appropriate when, as here, the bankruptcy court presided over a bench trial in which witnesses testified and the court made credibility determinations.
GMBH first argues that the bankruptcy court did not consider evidence that GMBH regularly deferred payment for third parties and that DANA itself regularly allowed customers to defer payment *236 on spare parts. However, even taking these facts into account, they do not undermine the bankruptcy court’s finding that GMBH and DANA had a special relationship. GMBH’s chief financial officer testified that DANA was treated “specially,” that the deferment of DANA’s payments was a “market investment,” and that DANA “was a sister to us or a daughter.” This testimony obviously supports the bankruptcy court’s finding of a special relationship, and so we cannot conclude that its finding is clearly erroneous.
Nor do we find persuasive GMBH’s argument that the bankruptcy court erred in finding a de facto subordination agreement between GMBH and DANA. Although GMBH is correct that there is no direct evidence that DANA would only pay GMBH after satisfying its other creditors, there is substantial evidence that GMBH would only recover from DANA after DANA was “positive” or “profitable.” This evidence, in conjunction with other evidence of the special relationship between GMBH and DANA as well as GMBH’s interest in DANA’s survival, supports the bankruptcy court’s finding as to DANA and GMBH’s repayment arrangement.
GMBH additionally contends that the bankruptcy court should not have re-characterized the $27 million claim that the audit found was debt that DANA owed GMBH. The audit indicated that GMBH had assumed many of DANA’s losses, but still showed an outstanding balance of $27 million. In recharacterizing the entire spare parts claim, the bankruptcy court recognized the audit’s identification of $27 million in debt, but noted that the spare parts transactions continued after the completion of the audit, thereby altering the audit’s findings. In fact, records indicated that Dana made a payment of $27 million to GMBH four months after the completion of the audit. The court concluded that there was no evidence suggesting that post-audit transactions “should be treated as any less a ‘market investment’ than those predating it.” In addition, the district court pointed out that the $27 million “that was still considered at the time of the Audit to be a viable receivable did not correspond to any line item or discernable combination of line items on the inter-company statement that had been signed for the same fiscal reporting period.” In light of these facts, we cannot find that the bankruptcy court clearly erred when it determined that the entire spare parts claim was in actuality an equity investment.
V.
For the foregoing reasons, the judgment of the district court is

AFFIRMED.

. GMBH is the sole shareholder of Dornier Aviation Holdings North America (DAHNA), which in turn is DANA’s sole shareholder. GMBH is itself a subsidiary of Fairchild Dornier Corporation.

. As the bankruptcy court noted, the billing system between GMBH and DANA was complicated; the parts that DANA provided to GMBH customers as part of a warranty or initial provisioning package were credited against the amount that DANA owed. GMBH's accounting practices made it difficult to determine which invoices had been satisfied because the credits were not linked to particular invoices "but were simply netted against the gross amounts billed to DANA for parts shipped. As a result, there appears to *230 be no way to distinguish between 'open' and 'paid' invoices.''

. The bankruptcy court estimated that the payout for general unsecured claims would be between 3.5 cents and 41.1 cents on the dollar.

. GMBH does not appeal the bankruptcy court's grant of partial summary judgment to the Committee with respect to this portion of the claim.

. In addition, GMBH’s argument as to the proper interpretation of AutoStyle Plastics and Hedged-Investments conflicts with its own assertion that Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692 (5th Cir.1977), prohibits the disallowance of claims if the court determines that the asserted debt is actually equity. In fact, a proper understanding of these cases shows that Mobile Steel concerned a different question from the one we confront in this case: although Mobile Steel held that disallowance was an inappropriate remedy for a determination that a claim is equity rather than debt, it did not specifically address the appropriateness of re-characterization as a remedy in such a situation. Thus, Mobile Steel does not in any way conflict with our holding (and the holdings of the Third and Tenth Circuits) that recharacterization is distinct from both disallowance and equitable subordination.

. The district court listed the 13-factor test articulated in Cold Harbor, 204 B.R. at 915, while the bankruptcy court discussed both the 11-factor test from AutoStyle Plastics and the 13 factors used by the Tenth Circuit in Hedged-Investments, 380 F.3d at 1298. The substance of all of these multi-factor tests is identical.

. GMBH also criticizes the bankruptcy court’s use of the term "write-down,” arguing that a write-down never occurred because it did not forgive DANA’s debts. Even if the bankruptcy court's use of the term "write-down” was in error, we agree with the district court that GMBH "miss[es] the court's emphasis not simply on the facial effect of GMBH’s accounting mechanisms but on the Audit’s and Management Report’s explanations of the 'assumption' of DANA's debt, of GMBH's 'family' relationship with DANA and of GMBH’s resulting self-interest and motivation in supporting DANA financially.”