**In re John E. DYER, Kathleen C. Dyer, Debtors.**

No. 06–32249.

United States Bankruptcy Court,
W.D. North Carolina,
Charlotte Division.

June 27, 2007.

David R. Badger, Charlotte, NC, for Debtors.

## MEMORANDUM OF DECISION

J. CRAIG WHITLEY, Bankruptcy Judge.

**A HEARING** was held April 26, 2007 on the Debtors' Motion for Reconsideration of the Order Dismissing Case. Creditor Colonial Bank, N.A. ("Colonial") has joined the Debtors' motion. The Bankruptcy Administrator opposes reinstatement.

*Holding:* Section 109(h) requires an individual contemplating bankruptcy to obtain a credit briefing within a 180–day period before he or she files. Since the present debtors' briefing occurred outside the 180–day window, they are ineligible for Chapter 7 relief. Accordingly, the reconsideration motion is **DENIED.**

## STATEMENT OF FACTS & PRIOR PROCEEDINGS

On December 28, 2006, Johnny and Kathleen C. Dyer (the "Dyers") filed a voluntary Chapter 7 bankruptcy case in this court. From their petition it appears that the Dyers are insolvent. They appear to pass the § 707(b) "means test." Additionally, with 123 creditors and $1.5 million of debt, they appear to be worthy candidates for Chapter 7. Not surprisingly, no creditor has sought dismissal of their case. One, Colonial, affirmatively supports the petition.

The rub with the Dyers' bankruptcy case relates to their pre-petition credit briefing. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added a new § 109(h) to the Bankruptcy Code. This provision requires individuals contemplating bankruptcy to obtain a credit briefing from an approved budget and credit counseling agency during the 180–day period preceding their filing date. See 11 U.S.C. § 109(h).

The Dyers obtained a credit briefing on June 7, 2006, or 204 days before their filing date. Since their briefing fell outside the statutory window, the Bankruptcy Administrator moved to dismiss the case. See Motion to Dismiss filed January 9, 2007.

At a hearing on the motion held February 15, 2007, the and dismissed the case. Order entered February 26, 2007. This motion followed. Given the novelty of the issue, the bankruptcy case was provisionally reinstated and the automatic stay reimposed pending a hearing and ruling on the reconsideration motion. See Order entered March 13, 2007.

## DISCUSSION

■ New § 109(h) provides in relevant part:

[A]n individual may not be a debtor under this title unless such individual has, during the 180–day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by tele-

phone or on the Internet) that outlined the opportunities for available credit counseling and assisted such Individual in performing a related budget analysis.

11 U.S.C. § 109(h).

Compliance with § 109(h) is evidenced by the debtor filing a certificate with the court showing where and when the briefing was obtained. See 11 U.S.C. § 521(b).

Although their briefing occurred 24 days beyond the 180–day statutory window, the Dyers suggest that their case may be administered. They make three primary arguments in support. First they argue § 109(h) is not jurisdictional, enabling the bankruptcy court to excuse a tardy briefing under § 105 or the doctrine of substantial compliance. Second, they say that due to their background and circumstances attendant to their filing, strict enforcement of the 180–day rule would not further the congressional purposes of § 109(h). Third, they maintain strict adherence to the statutory terms may lead to unforeseen and undesirable results in other bankruptcy cases. The Dyers cite a number of cases decided under § 109(h), including three unpublished decisions from this district,[1] in support of their theories.

The Bankruptcy Administrator's position is simple. Section 109(h) means what it says. The Dyers did not obtain a credit briefing within 180 days of bankruptcy, so they are ineligible for bankruptcy. The case must be dismissed. While I am entirely sympathetic to the Dyers' position, and with respect to my colleagues' contrary opinions, I conclude that the Bankruptcy Administrator is correct. The case must be dismissed, although without prejudice.

Indisputably, the Dyers obtained their credit briefing outside the 180–day window, and they are not in compliance with § 109(h). That being so, unless they fall within a statutory exemption or an equitable doctrine excuses the omission, they may not be debtors.

Section 109(h) contains three exemptions to the credit counseling requirements. First, credit counseling may be waived if there are no approved counseling agencies in the judicial district where the debtors reside. 11 U.S.C. § 109(h)(2)(A). Second, waiver may be granted in cases of "exigent circumstances," to the extent the debtor requested credit counseling services, but was unable to obtain them, during the five-day period from the date of the request. 11 U.S.C. § 109(h)(3)(A)-(B). Third, waiver may be granted where the debtors are subject to "incapacity, disability, or active military duty in a military combat zone." 11 U.S.C. § 109(h)(4).

The Dyers have not alleged entitlement to any exemption; nor have they filed the necessary documentation required for the subpart (h)(3) & (h)(4) exemptions. If they are to be excused from the briefing requirement, that relief must come from outside § 109(h).

The Dyers have suggested that § 109(h) is not jurisdictional such that this Court may employ either its § 105 powers or the substantial compliance doctrine to excuse their untimely credit briefing. I agree with the first assertion, but disagree with the second.

■ The Dyers' jurisdictional argument relates to an unsettled point of bankruptcy law: Does a bankruptcy petition case filed by an ineligible individual commence a case that is subject to dismissal or is it

---

1. *In re Hignutt,* Case No. 06–51105 (Bankr. W.D.N.C. Feb. 8, 2007) (Wooten, J.); *In re Ramseur,* Case No. 06–51083 (Bankr. W.D.N.C. February 8, 2007) (Wooten, J.); and *In re Ledford,* Case no. 07–40012 (February 23, 2007) (Hodges, J.).

simply void? Most bankruptcy courts opt for the former, but a small minority has concluded that the filing is void. See *In re Seaman,* 340 B.R. 698, 707–09, (Bankr. E.D.N.Y.2006) (Holding that the case should be dismissed rather than stricken, and citing cases with a similar holding.). The undersigned has sided with those courts holding that a case filed by an ineligible individual is not legally void, but is subject to dismissal. See *In re Baxter,* Case No. 06–30452 (Bankr.W.D.N.C. May 17, 2006).

 However, I disagree with the Dyers' secondary conclusion, to-wit, a non-jurisdictional statute need not be enforced according to its terms. The U.S. Supreme Court has stated on three different occasions that where a section of the Bankruptcy Code is cast in plain language and does not lead to an absurd result, the bankruptcy judge's role is simply to enforce it. *Lamie v. U.S. Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 1946, 147 L.Ed.2d 1 (2000); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The 180–day period in § 109(h) is clearly stated. It also does not compel an absurd result. At least in theory, this provision serves a rational purpose. It ensures an individual contemplating bankruptcy (1) obtains credit information, (2) considers non-bankruptcy alternatives, and (3) if that individual decides to file bankruptcy, that decision is made while the garnered information is still fresh in his or her mind.

As such, while bankruptcy courts may quibble whether a filing in violation of § 109(h) is void or instead is subject to dismissal, almost all bankruptcy courts agree such a case may not be administered. See *In re Seaman,* 340 B.R. 698

(Bankr.E.D.N.Y.2006) (Discussing cases holding that in the absence of a properly filed credit counseling certificate, the bankruptcy case may not be administered).

And to date, every published case involving a credit briefing occurring more than 180 days before the filing date has held that omission to be fatal. See *In re Jones,* 352 B.R. 813 (Bankr.S.D.Tex.2006) (190 days prior to filing); *In re Williams,* 359 B.R. 590 (Bkrtcy.E.D.N.C.2007) (182 days); *In re Ruckdaschel,* 364 B.R. 724 (Bankr.D.Idaho 2007) (187 days); *In re Moon,* Case No. 06–40607, 2007 WL 1087452 (Bankr.D.Idaho Apr.5, 2007) (271 days); *In re Giles,* 361 B.R. 212 (Bankr. D.Utah 2007) (credit counseling 182 days prior to filing); *In re Gaddis,* Case No. 07–40476, 2007 WL 1610783 (Bkrtcy. D.Kan. June 4, 2007) (186 days).

A review of the latter group of cases reveals the same general arguments advanced by the Dyers. Debtors argue that § 105 permits the Court to disregard the timeliness of the briefing. Section 105 is a catchall provision that authorizes the bankruptcy court to issue "any order, process, or judgment necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Given this broad language, debtors argue the bankruptcy judge may excuse a failure to comply with § 109(h) filing, under compelling circumstances. See Response/Objection to Motion to Dismiss, filed January 24, 2007, Second Defense.

 Such reliance on § 105 is misplaced. Section 105 may not be employed to override other Bankruptcy Code provisions. As the Fourth Circuit has held:

Section 105 is not, of course, unlimited. It cannot be invoked, for example, to achieve ends contrary to other specific Code provisions. Section 105 states, after all, that it empowers the court to

"carry out the provisions of [the Bankruptcy] title."

*In re Kestell*, 99 F.3d 146, 148–49 (4th Cir.1996).

Since § 109(h) requires pre-bankruptcy counseling within a specified time period (180 days), § 105 may not be used to alter that period. Doing so would not carry out a Title 11 provision, but would mean ignoring one. *Accord In re Ruckdaschel*, 364 B.R. 724 (Bankr.D.Idaho 2007) ("This Court declines to read § 105(a) so broadly as to modify the time limit in § 109(h)(1) . . . .").

■ The Dyers' substantial compliance argument and their related equitable arguments (e.g., "We didn't need the briefing.", etc.) run into the same problem. The debtors argue that the congressional purposes underlying § 109(h) have been achieved in their case. The slight untimeliness of their credit briefing is therefore a matter of "no harm, no foul." The Dyers note that § 109(h) was intended to: (1) educate prospective debtors as to non-bankruptcy alternatives and (2) encourage them to seek these avenues before bankruptcy. See Response to Motion to Dismiss, Second Defense, Subparagraphs b and c.

The Dyer's correctly state the purposes of the new law. Congress enacted BAPCPA under the belief that too many individuals employ bankruptcy as a first, rather than a last, resort. See H.R.Rep. No. 109–31, pt. 1 at 4 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 90–91. BAPCPA was intended to correct this tendency. One means to that end was to require a credit briefing before the filing. "The bill requires debtors to receive credit counseling before they can be eligible for bankruptcy relief so that they will make an informed choice about bankruptcy, its alternatives, and consequences" U.S.Code Cong. & Admin.News 2005, pp. 88, 89.

Well and good. The Dyers say they substantially complied with § 109(h) and the congressional purposes were achieved in their case. They maintain that given their backgrounds, they did not need any credit counseling to begin with. Both Dyers are college educated and are knowledgeable as to credit and finance. Mr. Dyer is a mortgage broker and is part owner of a mortgage company. Mrs. Dyer works for a bank. With these backgrounds, the Dyers know a thing or two about credit.

However, if they needed credit education, they got it—twice. The Dyers sat for a first credit briefing before bankruptcy, in June 2006. After bankruptcy and once this motion was filed, the Dyers took a second briefing. Both briefings occurred outside the 180–day period, but the required information was garnered.

According to them, the second congressional purpose (having the individual consider non-bankruptcy solutions before bankruptcy) was also met. Between the first credit briefing and the filing date, the Dyers negotiated a consensual liquidation of Mr. Dyer's business assets with their primary lender, Colonial.

Finally, the Dyers suggest that to adhere to the wording of § 109(h) will lead to abuse. They foresee unscrupulous debtors raising their own failures to qualify for bankruptcy relief to force dismissal of asset cases. According to them, lack of a pre-petition credit briefing might even bar creditors from filing involuntary petitions.

The Court is sympathetic to the Dyers' situation. Many in the bankruptcy area doubt that the BAPCPA provisions hit their intended target, the elimination of abusive bankruptcy filings. Also, there is serious doubt that the credit briefing requirement has any appreciable deterrent effect on bankruptcy filings. U.S. Gen.

Accountability Office, Bankruptcy Reform: Value of Credit Counseling Requirement Is Not Clear, GAO–07–203, 24 (April 2007). The primary effect of this provision appears to be adding more cost and delay to a process already unaffordable for most prospective debtors. Given their circumstances, it is difficult to believe that the Dyers would have come to any decision other than to file Chapter 7, even if they had garnered the financial information 180 days before filing instead of 204 days.

However, I cannot accept their theory. This is not a case of substantial compliance. Where the Code prescribes an action and also specifies a time period for that action to occur, it is hardly substantial compliance to perform the act 24 days out of time.

▪ Second, like the Dyers' other arguments, substantial compliance is ultimately an equitable doctrine. *In re Eagle–Picher Indus., Inc.,* 285 F.3d 522 (6th Cir.2002); *BankAmerica Pension Plan v. McMath,* 206 F.3d 821, 827 (9th Cir.2000); *Aetna Life Ins. Co. v. Hayes,* 324 F.2d 759, 761 (6th Cir.1963). It is well established that equitable principles cannot override the clear dictates of a statute. *U.S. v. Noland,* 517 U.S. 535, 543, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996); *Stebbins v. Crocker Citizens Nat'l Bank (In re Ahlswede),* 516 F.2d 784, 787 (9th Cir.1975), ("[T]he [equity] chancellor never did, and does not now, exercise unrestricted power to contradict statutory or common law when he feels a fairer result may be obtained by application of a different rule"). This is true even in the bankruptcy courts: "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

Congress did not give bankruptcy judges the right to selectively enforce the § 109(h) requirements under equitable principles. As one bankruptcy court has expressed the point:

> If Congress intended that the bankruptcy courts have the power to vary the eligibility requirements, presumably § 109(h) would have preceded its instructions in the statute with the phrase "unless the court orders otherwise...." The Code contains a number of provisions that include that specific language, and the courts have interpreted such language to allow the exercise of discretion by the bankruptcy court to act independently. But 109(h) does not contain this discretionary phrase. The Court must therefore presume that Congress intended no such license for discretion.

*In re Ruckdaschel,* 364 B.R. at 733.

Or as a member of this Court is wont to say, "Equity is not an unfenced field in which I am at liberty to roam." Here, I find myself both fenced in, and hogtied.

Even if equitable theories were available, they would not excuse this dilatory filing. Even those few courts that believe they can excuse § 109(h) omissions, limit the relief to extraordinary cases beyond the debtor's control. Where the debtor and/or his counsel are in control, even those courts apply § 109(h) according to its terms. *In re Hess,* 347 B.R. 489, 498–99 (Bankr.D.Vt. Aug.14, 2006); *In re Ginsberg,* 354 B.R. 644, 647–48 (Bankr. E.D.N.Y. Nov.13, 2006).

Our case presents no extenuating circumstances. Nothing prevented the Dyer's from obtaining their counseling within the specified time period, except their own inaction. Even if substantial compliance or another equitable theory could modify the statute, it would not cure the problem here.

As to the Dyers prediction that following the statute may result in abuse, I suspect the potential problems will not be all that dire. However, if they are correct, if § 109(h) turns out to be an ill-conceived statute, then there is a simple solution: remedial legislation. The answer is not judicial rewrite of an existing statute.

■ The Dyers suggest a final theory: there is no prescribed consequence for not fully complying with § 109(h). The short answer to this assertion is, look at the Section's title. If you don't qualify under § 109, you cannot be a debtor. If more formal authority to dismiss is required, look no further than the Code's dismissal provisions. Sections 707(a) (Chapter 7 debtors) and 1307(a) (Chapter 13 debtors) both permit a court to dismiss a case for "cause." Common sense dictates that statutory ineligibility to be a debtor would constitute "cause" for dismissal. See *In re Ruckdaschel,* 364 B.R. 724 (Bankr.D.Idaho 2007).

In sum, in enacting § 109(h), Congress both required pre petition credit counseling for individuals considering bankruptcy and created a bright line rule as to when this was to occur. I can no more ignore this time limitation than I can deem a transfer outside the § 547(b) 90-day window to be a preference. Where Congress provides a clear and unambiguous rule, there is simply no room for a judge to substitute his or her own opinion.

This case is **DISMISSED.**

**SO ORDERED.**